UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JIM R. OWENS, II | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 1:06-CV-4802-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Jim R. Owens, II ("Plaintiff"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI").[1]  Mr. Owens timely pursued and exhausted his administrative remedies and the

_____

[1]Plaintiff originally filed concurrent applications for both Disability Insurance Benefits ("DIB") and SSI.  After proper notice, a hearing was held on October 24, 2005, before an Administrative Law Judge ("ALJ").  At the hearing, Plaintiff requested that his alleged onset date of disability be amended from January 1, 1994, to January 12, 2004. In doing so, Plaintiff acknowledged that he was effectively dismissing his request as it related to his application for a period of disability or DIB.   Therefore, for purposes of this opinion, the Court will consider only Plaintiff's eligibility to receive SSI benefits.

decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Owens was fifty-three years old at the time of the alleged onset date of disability.  He has a high school education and past work experience as a laborer.  Mr. Owens claims that he became disabled on January 12, 2004, due to headaches; Hepatitis C; problems with his neck, shoulders, elbows, wrists, legs, knees, and ankles; as well as depressive features.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340,

1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.  20 C.F.R. § 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not

disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Owens has not engaged in substantial gainful activity since the alleged onset of his disability.  (Tr. at 15.)  According to the ALJ, Plaintiff has the following "severe" impairments based on the requirements set forth in the regulations: degenerative joint disease impacting right leg and ankle; status-post amputation of the 4th and 5th digits of the right hand in 1990; history of Hepatitis C with no major G.I. problems; cervical degenerative disc with pain; and generalized osteoarthritis.  *Id.* at 15-16.  However, the ALJ also found that these impairments neither met nor medically equaled any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.  *Id.* at 16. The ALJ did not find Mr. Owens's allegations to be totally credible, and she determined that Plaintiff has the RFC to perform a restricted range of work at the light level of physical exertion with some restrictions.  *Id.* at 22. These restrictions include: "limitations of handling caused by reduced bilateral upper extremity strength and diminished grip of left hand, secondary to right shoulder arthritic component and left hand finger amputations."  *Id.*

According to the ALJ, Mr. Owens has no past relevant work, he is a "person closely approaching advanced age," and he has a "high school education" as those terms are defined by the regulations. *Id.* Even though Plaintiff cannot perform the full range of light work, the ALJ used Medical-Vocation Rule 202.13 as a guideline for finding that there are a significant number of jobs in the national economy that he is capable of performing. These jobs include work as a janitor, a packager, and a machine operator. *Id.* The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." *Id.*

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Mr. Owens alleges that the ALJ's decision is not supported by substantial evidence for two reasons.  First, Plaintiff believes that the ALJ's findings focused on the aspects of the record tending to demonstrate that he was not disabled, and "understate[d], if not completely ignored, those elements that would require her to conclude otherwise."  (Doc. 7 at 5.) Specifically, Plaintiff argues that the ALJ failed to give weight to the evidence which supports his claim for disability based on "chronic moderately severe pain."  *Id.* at 6.  Second, Plaintiff contends that the ALJ "incorrectly found that Plaintiff retains the capacity to perform light work activity."  *Id.* at 7.

A.    Evaluation of the Medical Evidence.

Plaintiff asserts that the ALJ's evaluation of both the medical evidence as well as his subjective complaints of pain was improper.  Specifically, Mr. Owens alleges that the medical records reveal a "longitudinal history of complaints of continued pain and continued treatment thereof."  *Id.* at 6.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.

*See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.").  Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting

*Foote*, 67 F.3d at 1562).  "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole."  *Id.* (internal quotations omitted).

In this case, the ALJ found that Mr. Owens met the first prong of the Eleventh Circuit's pain standard, but she did not believe that the evidence confirmed the severity of the alleged pain arising from that condition or that any medical condition existed that was of such severity that it could reasonably be expected to give rise to the disabling pain and other limitations alleged by Plaintiff.  (Tr. at 18.)  The ALJ considered Mr. Owens's allegations of pain in his back, hip, wrist, elbow, shoulder, leg, knee, and ankle.  She also considered Plaintiff's claims that he is only able to sustain activity for 15-20 minutes and can walk for only approximately one half of a block.   However, after reviewing the medical evidence, the ALJ determined that Plaintiff "experienced no more than chronic intermittent pain, mild to occasionally moderate in severity, corresponding limitations of function, and with multiple exacerbation factors including heavy lifting,

and constant repetitive bending or stooping, secondary to mild degenerative

disc disease of the cervical spine and mild osteoarthritis of multiple joints."

*Id*. at 18-19.  The ALJ also concluded these limitations do not "present . .

. such a sufficient degree of abnormality . . . as would preclude all work

activity, especially work activity at the light and sedentary levels of physical

exertion."  *Id* at 19.

To support this position, the ALJ discussed that:

[a] series of radiological diagnostic examinations of multiple
joints have revealed . . . minor degenerative changes of the
cervical spine, most severe at C5-6 (of mild to moderate
severity), but no evidence of acute abnormality or spinal
stenosis; degenerative changes of the right wrist typical of mild
to moderate osteoarthritis, but without evidence of acute
abnormality or deformity; slight deformities of the right elbow
consistent with a prior injury or possible previous fracture of
radial head, but no acute abnormality or deformity; mild
degenerative changes of right hip; degenerative changes of right
shoulder AC joint with moderately severe inferior spurring
involving the distal clavicle; no detectable acute injury to left
ankle; and patent right ankle mortis with no gross fracture or
dislocation identified. . . .   Ongoing medical management
reveals clinical findings remarkable for the following:
tenderness to both wrists with minimal restriction of extension
of fingers; tenderness over right shoulder AC with some AC joint
and shoulder limitation of movement; some minimal edema to
right elbow, right shoulder, and thoracic and upper lumbar
spines past midline; some discomfort on flexion of spine; an
appearance of anxiousness; and varicose veins of the bilateral

lower extremities around the knee area.

*Id*. at 17-18.

Furthermore, on February 24, 2004, Dr. Jariwala performed a comprehensive physical examination of Plaintiff.  The examination revealed:

> no deficit of locomotion, gait, or station; slight swelling over right elbow with tenderness; left arm/shoulder strength of 4/5; left grip strength of 2/5; right shoulder and right hand grip strength of 4/5; and no abnormal limitation of motion of the extremities with the exception of some minimal impairment of dorsal and planter flexion of the right wrist and some diminished abduction of left shoulder, secondary to pain.  Radiological examination of Claimant's right wrist revealed minimal narrowing of joint spaces, deemed consistent with mild osteoarthritis.  Dr. Jariwala opined that Claimant could button clothes, tie shoe laces, pick up small objects, hold a glass, [and] turn a door knob with his right hand but not with his left hand.

*Id*. at 18.

Finally, with regards to Plaintiff's testimony regarding his functional limitations and inability to work, the ALJ noted that Plaintiff admitted that he worked "off and on" over the last couple of years and worked "a little last year" in exchange for a place to live and utilities.  This evidence led the ALJ to find that Plaintiff's testimony was only partially credible.

It appears to the Court that the ALJ specifically addressed both the

medical evidence and Plaintiff's allegations of pain in her opinion, and she provided explicit and reasonable reasons for reaching her conclusions.

B.     Owens's Residual Functional Capacity.

Plaintiff also argues that the ALJ's findings are not supported by substantial evidence with respect to the ALJ's determination that Plaintiff retains the RFC to perform the exertional demands of light work.  (Doc. 7 at 7.)  Specifically, Plaintiff asserts that due to his "degenerative joint disease and cervical degenerative disc with pain and generalized osteoarthritis," the medical evidence cannot reasonably be construed to be consistent with the ALJ's RFC determination.  *Id.*

A RFC is defined as "the most you can still do despite your limitations," and the Agency will assess RFC based on "all the relevant evidence in your case record."   20 C.F.R. § 404.1545(a).   The Grid Guidelines define light "work as work which involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." 20 C.F.R. § 404.1567(b).  Even though the weight lifted may be very little, a job is in the light category when it requires a good deal of walking or standing, or when it involves sitting most of the time with

some pushing or pulling of arm or leg controls.  *Id.*

In determining that the Plaintiff retains the RFC to perform a restricted range of light work, the ALJ explained that he carefully considered Plaintiff's subjective allegations of pain as well as the medical evidence and medical opinions contained in the record.[2]  (Tr. at 18-20.)  In fact, the ALJ noted that Plaintiff's ability to sit, stand, walk, lift, and carry are affected by several impairments.  *Id.* at 17.  However, the ALJ determined that Plaintiff's condition is not of the severity that it could reasonably be expected to give rise to continuous disabling pain or a disabling medical condition.  The ALJ expressly found the Plaintiff's subjective allegations to be only partially credible because the objective medical evidence did not support the severity of the symptoms alleged.  *Id.* at 20.

The ALJ based her decision that Plaintiff retained the RFC to perform a restricted range of light work on objective medical evidence.  This Court finds that the reasons the ALJ articulated for rejecting the Plaintiff's claims

---

[2]The objective medical evidence as well as Plaintiff's subjective allegations of pain were discussed in the previous section.

were explicit and adequate.  Therefore, this Court finds that substantial evidence supports the ALJ's determination that the Plaintiff can perform a restricted range of light work.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Mr. Owens's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 28<u>th</u> day of <u>May 2008</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**